| | |
|---|---|
| ONLINE GURU, INC.,<br><br>       Plaintiff,<br><br>  v.<br><br>CARTAGZ INC.,<br><br>       Defendant.<br><hr>CARTAGZ INC.,<br><br>       Counter-claimant,<br><br>  v.<br><br>ONLINE GURU, INC.,<br><br>       Counter-Defendant | No. 2:17-cv-01121 TLN GGH<br><br>ORDER ON MOTION TO COMPEL |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

*INTRODUCTION*

      Both private parties are involved in assisting California residents to register vehicles and other sundry tasks required by the California Department of Motor Vehicles (DMV), but in different ways. Defendant, counter-claimant,[1] Cartagz, a for-profit company, directly interfaces

---

[1] The document containing the counter-claim is denominated a "cross-complaint," but under

1

with DMV on behalf of its customers who need to renew their yearly car registration, and for whatever reason, do not desire to use the free official government website to do so. There are a number of businesses performing this service besides Cartagz, e.g., CA Reg, EZ Tags. Plaintiff, counter-defendant, Online Guru operates a number of websites for advertising purposes. By good luck or acumen, Online Guru acquired the domain name, "DMV.org," not to be confused with the government website "DMV.gov." Evidently, the registration companies contract with Online Guru for advertising purposes, probably because many persons, if not a majority of persons seeking registration assistance, are attracted to the DMV.org website either on purpose or perhaps initially thinking they are contacting the government website. Through a computer process not necessary to detail here, Online Guru directs its customer traffic to various private, for-profit, registration companies with which it has contracts. The registration companies then assist the potential customer. The DMV permits the private companies to interface with it, but these companies must obtain a license from DMV to do so.

The removed complaint alleges a relatively straight forward failure to pay money, breach of contract action with related alternative remedy counts. That is:

> 5. Plaintiff alleges that on or about 04/08/2009, a written agreement was made between Plaintiff [Online Guru] and Defendants [Cartagz]. By the terms of said agreement, Plaintiff provided services to Defendants. Defendants promised to pay.
>
> 6. On or about 09/30/2015, Defendants … breached the agreement by failing to pay for services…. Demand for the outstanding balance owed of $20355.10 was made upon Defendant… and [it has] failed and refused… to pay….

Cartagz alleges in its counter-claim that it supplied an interactive advertisement/form to Online Guru for its advertisements with which members of the public could ultimately accept the registration services of Cartagz. The counter-claim further alleges that Online Guru took an interactive advertisement created by Cartagz, and later utilized it as a means by which a Cartgaz

---

federal procedure would be a counter-claim by the original defendant against the original plaintiff.

competitor (CA Reg) could acquire the business with which it (Cartagz) would otherwise have procured through its advertisement form. Cartagz concludes that the use of the form by Online Guru for Cartagz competitors infringed its advertisements/forms copyright protections. The date given in the counter-claim for the first violation of Cartagz copyright rights occurred on September 30, 2015.

Specifically, the counter-claim alleges:

First Claim- Copyright Infringement—"From on or about September 30, 2015 to the present, Online Guru has infringed…by, among other acts, copying the Cartagz Ads, preparing derivative works based on the Cartagz Ads to create the Infringing Ads, reproducing those derivative works, and displaying those derivative works publicly.'

Second Claim—Unfair Business practices—based on copyright infringement and providing vehicle registration services without a state license.
Third Claim—Breach of Contract—by ceasing to run Cartagz ads; by making unauthorized copies and derivative advertisements based on Cartagz advertisements; and: "using Cartagz's confidential information for purposes other than carrying out the [contractual] Agreement; namely, on information and belief, by sharing Cartagz's confidential information with Sanders and related parties [e.g., CA Reg]."

It should also be noted at this time, that since 2014, there has been an underlying hostility between Cartagz and CA Reg. Cartagz believed that that the CA Reg founder (Gregory Sanders—a former principal with Cartagz) misappropriated trade secrets and other Cartagz property for use in engaging in competition with Cartagz. This hostility erupted into a lawsuit, 2:15-cv-01918 MCE GGH, which was settled before the undersigned in 2016. In very general terms, Cartagz, once an industry leader in private registration assistance, fell upon hard times when Gregory Sanders left Cartagz and founded CA Reg and other related companies/websites which then greatly surpassed Cartagz in business. Cartagz believed that this success had been accomplished through the commission of business torts by Sanders and his companies/websites. Ostensibly, neither Sanders nor CA Reg is sued in the counter-claim because of the settlement provisions.

## *DISCUSSION*

Cartagz is moving to compel production of documents by Online Guru. The parties have dutifully reproduced the request for production discovery at issue, and dutifully set forth (and

repeated and repeated…) legal arguments, which stretch to 117 pages. To make sense of this morass, the undersigned has divided the discovery requests into five areas:

1. Production of advertisements displayed on the parties' website;
2. Production of correspondence between the parties, including correspondence of companies and individuals associated with third parties;
3. Production of "all documents" or "payment" documents associated with a third party individual (Gregory Sanders) and CA Reg, Continuum Data Products, EZTagz; DMV.com, and billing records of Cartagz, CA Reg
4. Production of Online Guru "ownership" documents
5. Production of "Advertising data" records of Cartagz, CA Reg, and "all" "advertising data."

However, before delving into the disputed requests, the undersigned finds several overarching problems with many of these discovery requests:

1. Most are unlimited as to time frame even though the counter-claim is restricted as to time frame;
2. Many requests are untethered to the specific allegations in the counter-claim or the complaint;
3. Many of the requests pay no attention to the business/financial privacy interests of non-sued third parties.
4. Several of the discovery responses make boilerplate objections such as "vague and ambiguous" or "unduly burdensome", and then provide in substance: without waiver of the above objections, the documents will be produced. This type of response makes it impossible to determine what, if anything, has been withheld, i.e., whether there is any real dispute to be resolved.

Group 1

Request for Production 1: ALL advertisements displayed on the WEBSITE offering vehicle registration services, from the first publication of the WEBSITE to the present.

Request for Production 2: ALL advertisements displayed on the WEBSITE offering CA

REG's vehicle registration services, from the first publication of the WEBSITE to the present.

<u>Request for Production 3</u>: ALL advertisements displayed on the WEBSITE offering Cartagz's vehicle registration services, from the first publication of the WEBSITE to the present.

For each of these requests, Online Guru makes its "vague and ambiguous," "beyond the scope of discovery," "confidential information," "no time restriction, and "unduly burdensome," and "equally available" objections, or variations thereon. It then states for Request 3: "Without waiving these objections, Plaintiff will agree to produce the Cartagz advertisments.

The undersigned understands the "WEBSITE" to be the dmv.org website from the Joint Statement. Having agreed to produce the Cartagz advertisements without limitation, Online Guru will be ordered to do so. The "without waiver" objections are meaningless. This concession removes any issue as to Request 3.

Nonetheless, Request 1 goes further to demand "all advertisements" which would seem to make requests 2 and 3 superfluous. This request, dating back to the dawn of the "WEBSITE," does not relate to the specific allegations of the counter-claim which precisely identify the date of infringement as "on or about September 30, 2015." The fair implication of the allegation is that Online Guru advertisements from whatever company or website prior to that time were not infringing. Nor does an "all advertisements," no matter what company is involved, make any sense. In one breath Cartagz claims: "In its request, Cartagz seeks information regarding the entities and individuals involved in Online guru's disabling of Cartagz advertisements and their replacement by Greg Sanders' infringing advertisements." Joint Statement at 5. It then appears to implicitly and inconsistently argue that any advertisement, from whatever time or from whomever made is fair game.

The undersigned has reviewed the plethora of affirmative defenses -- some might say "boilerplate"-- set forth in the Answer to the Counter-claim. There is no defense which would directly repudiate the date given for the infringement—September 30, 2015. However, the defenses of estoppel, waiver, consent and the like might factually implicate an earlier time, i.e., Online Guru was running infringing ads prior to the given date of infringement, but Cartagz did

not care, and this indifference forms the basis of the pled defenses. The defenses may also implicate companies'/websites' advertisements other than those associated with Gregory Sanders. The moral to the story of affirmative defenses is—be careful what you plead in the way of defenses, you just might have to produce discovery on them.

Therefore, one must tie discovery to Fed. R. Civ. P 26 (b)(1)-- that in order to be relevant, a request must relate to a "claim" or "defense," and giving an "on or about" reasonable time frame, as well as recognizing that the defenses may implicate a time prior, and not including Request 3 which has already been decided, Online Guru must produce all advertisements on the dmv.org website dating from September 30, 2012 to the present from any company or website.

This does not end the dispute. Cartagz argues that the advertisements per se are insufficient; rather all electronic information associated with the advertisements, e.g., metadata, presumably source code, and other electronic information need to be produced as well. The problem with this is that the requests specifically ask for, and only ask for, "advertisements" on the "WEBSITE" as these are the documents exposed to the public which would be infringing, if there is infringement. The request does not ask for the underlying electronic documentation, written drafts, old pictures, sticky notes, or anything else. Nor has the undersigned been directed to a definition in the non-filed Request for Production which would expand the plain meaning of "advertisements" to all documents associated with the "advertisement,", nor has a definition been given to the undersigned from the non-filed Request for Production requiring production in a certain, or any, electronic format. Thus, Online Guru's production of pdf copies of the advertisements themselves sufficiently respond to the requests and comply with the rules requirement that: "If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it ordinarily maintained, *or in a reasonably usable form or forms.* F ed. R. Civ. P 34 (b)(2)(E)(ii). Copies of advertisements in pdf format are the alternative, reasonably usable form in the context of this case and the discovery requested.

////

////

Accordingly, Online Guru shall produce any companies' advertisements from September 30, 2012 as directed above, except for Cartagz advertisements which will be unlimited as to time.[2]

Group 2

Group 2 is the "correspondence" group of requests:

Request for Production 4: ALL CORRESPONDENCE between CA REG and ONLINE GURU.

Request for Production 5: ALL CORRESPONDENCE between Gregory Sanders and ONLINE GURU.

Request for Production 6: ALL CORRESPONDENCE between Gregory Sanders and counsel for ONLINE GURU.

Request for Production 15: ALL CORRESPONDENCE to or from Andrew Mason REGARDING Cartagz.

Request for Production 16: ALL CORRESPONDENCE to or from Christian Grey REGARDING Cartagz.

On the face of Requests 4, 5 and 6, one could legitimately wonder whether the instant lawsuit is an attempted resurrection of the settled lawsuit, but assuming it is not, the requests are fatally overbroad. The overbreadth does not result *per* se from an "all documents" request for "correspondence." Rather it results from the fact that these parameters are not tethered to the issues in the case, nor is there any stated time frame. "Correspondence" (includes letters, emails, memos or nearly any writing transmitted by one to another) as appears in the request could be linked to any issue or event including business transactions having nothing to do with Cartagz advertisement copyright infringement or transmission of Cartagz "confidential information" (undefined in the counter-claim), e.g., golf games, friendly banter, football tickets and the like. Many cases stand for the proposition that the discovery must expressly relate to the issues in the case in which it is propounded. See, Painters Joint Comm v. Employers etc, 2011 WL 4549232

---

[2] The undersigned will reserve discussion of third party privacy matters for other requests as publicly displayed advertisements would not implicate privacy interests in the least.

7

*1 (D. Nev. 2011 ) (any and all documents concerning individual and entities over a five year period is overbroad); Cota v. Scribiner, 2011 WL 3189075 *3 (S.D. Cal. 2013) (all documents in defendants' personnel file is overbroad); D.A. Horton etc v. Am Safety Indem. Co. *4 (S.D. Cal. 2011); Wynn Las Vegas v. Joggolis, 2014 WL 2772241 *3 (D.Nev. 2014) (identify and produce all documents related to Wynn is overbroad); Amblat v. City and County of San Francisco, 2009 WL 3401278 (n.2) (N.D. Cal. 2009) (any and all documents between Patrick Brady and the Sheriff's Department is overbroad.) Perhaps there is the expectation here that the court will step in and frame the parameters around issues, but the court does not desire to be the parties' scrivener.

Nor does Cartagz' argument in the joint statement alleviate the problem. Rather, the much repeated statement that: "In its request, Cartagz seeks information regarding the entities and individuals involved in Online Guru's disabling of Cartagz's advertisements on its websites and their replacement by Greg Sanders' infringing advertisements," demonstrates that the above quoted requests do not contain this argumentative limitation at all.

Moreover, the requests obviously impinge upon the privacy interests of third parties. As briefed by Online Guru, a balancing of a third party's privacy, especial financial privacy, interests with the needs of the case must be employed. See, e.g., Simplicity International v. Genlabs Corp. 2010 WL 11509113 (C.D. Cal. May 7, 2010); Perinatal Medical Group Inc. v. Children's Hosp. Central Cal. Inc., 2011 WL 1833026 (E.D. Cal. May 12, 2011). It is not, as Cartagz suggests, that privacy interests are simply a matter of state law with no application in this federal case. Rather, the cases are legion that this balancing must take place—whether state or federal discovery law is at issue. See cases cited by Online Guru in Joint Statement; see also, e.g., Maldonado v. Sec. of CDCR, 2007 WL 4249811 (E.D. Cal. 2007) (MJ Hollows). Protections from public review of a third party's business interests would likely have to be drafted, and none have been attempted here, most likely because the request is so overbroad. The logistics of this case also weigh in at this point as discovery is slated to be closed in approximately one month.

Requests 15 and 16 more narrowly define the correspondence sought, but ultimately fall before overbreadth considerations as well. First, the parties fail to relate to the undersigned in a

meaningful way who these listed people are and why they have any relevance to the issues in this case. And, once again, the "all correspondence regarding Cartagz" requesst is not in any way limited to the issues in the case.

Accordingly, the motion to compel production of these requests are denied.

Group 3

Group 3 is described as "all documents" or "payment" documents associated with a third party individual (Gregory Sanders) and CA Reg, Continuum Data Products, EZTagz; DMV.com, and billing records of Cartagz, CA Reg. the precise requests are as follows:

<u>Request for Production 7</u>: ALL DOCUMENTS REGARDING Gregory Sanders

<u>Request for Production 8</u>: ALL DOCUMENTS REGARDING California Registration, Inc. aka CA REG.

<u>Request for Production 9</u>: ALL DOCUMENTS REGARDING payments from CA REG to ONLINE GURU.

<u>Request for Production 10</u>: ALL DOCUMENTS REGARDING payments from Gregory Sanders to ONLINE GURU.

<u>Request for Production 11</u>: ALL DOCUMENTS REGARDING payments from ONLINE GURU to Gregory Sanders.

<u>Request for Production 12</u>: ALL DOCUMENTS REGARDING payments from ONLINE GURU to Gregory Sanders.

<u>Request for Production 13</u>: ALL DOCUMENTS REGARDING Continuum Data Products aka CDP.

<u>Request for Production 14</u>: ALL DOCUMENTS REGARDING EZTagz.com.

<u>Request for Production 18</u>: ALL DOCUMENTS REGARDING DMV.com.

<u>Request for Production 19</u>: ALL billing records REGARDING Cartagz.

<u>Request for Production 20</u>: ALL billing records REGARDING CA REG.

Request 19 is germane to the non-payment claim brought by Online Guru in the initial complaint. "Without waiving objections," Online Guru acceded to the request. The documents responsive to this request shall be produced.

Request 20 is of problematic relevance. Perhaps the theory is that CA Reg was paying

9

Online Guru "extra" for use of Cartagz advertisements, or for the Cartagz "confidential information" alleged to have been imparted, i.e., the billings were in excess of the "normal charge" Online Guru would charge for directing internet traffic to the CA Reg site. On the other hand, Cartagz might simply want to see if CA Reg received a better deal that Cartagz. However, if the sought information is subject to, initially at least, a protective order, the court will order its production from 2014 to the present time.

Requests 7, 8, 13, 14 are obviously overbroad for the reasons set forth in the previous discussion. The requests are constrained neither by subject matter nor by time period. They need not be the subject of response.

The remaining requests in this group, 9, 10, 11, and 12 are now reviewed, but first, the allegations of the counter-claim should be set forth again here. Cartagz' contract or AGREEMENT was breached by the alleged copyright infringements knowingly entered into by Online Guru, and by ceasing to run Cartagz ads; by making unauthorized copies and derivative advertisements based on Cartagz advertisements (again, copyright infringement); and: "using Cartagz's confidential information for purposes other than carrying out the [contractual] Agreement; namely, on information and belief, by sharing Cartagz's confidential information with Sanders and related parties [e.g., CA Reg]."

First, it is difficult to understand what is meant by Cartagz's "confidential information"— everything Cartagz imparted to Online Guru, something less than all information, or specifically unidentified information? The requests ask Online Guru (and the court) to guess at what Cartagz would deem confidential information. Moreover, by the very allegations, and *only* allegations about breach of contract, the improprieties could only be one-way, i.e., actions taken by Online Guru to impart confidential information to Sanders, or one of the other Sanders related listed entities. Thus, it makes no sense in the context of this case for Online Guru to be making payments to the persons or entities to whom it was imparting information; rather the recipients of such information would be paying Online Guru. In many respects, the proposed discovery requests are requests for production in search of a case theory. Requests 11 and 12 need not be the subject of response.

This leaves Requests 9 and 10—payments to Online Guru from either Sanders or CA Reg. Although there may be significant overlap between the billings documents permitted to be discovered and payment documents, the undersigned will permit discovery of payments on the same basis as billings, i.e., limited as to time and pursuant to a protective order.

Group 4

The one request at issue here, No. 17, requests production of ALL DOCUMENTS REGARDING ownership of ONLINE GURU from January 1, 2008 to the present. Cartagz simply argues an incomplete sentence tautology regarding relevance: "Information about those in control of Online Guru at the relevant time periods Cartagz' claims for copyright infringement, unfair competition, and breach of contract, based on the display of infringing advertisements instead of Cartagz's." Joint Statement at p. 88. The court will limit document production to publicly filed documents which show ownership of Online Guru from 2015 to the present.

Group 5

This last group requests production of "advertising data" records of Cartagz, CA Reg, and "all" "advertising data." The pertinent requests are:

>   Request for Production 21: DOCUMENTS sufficient to identify all ADVERTISING DATA REGARDING Cartagz.
>
>   Request for Production 22: DOCUMENTS sufficient to identify all ADVERTISING DATA REGARDING CA REG.
>
>   Request for Production 23: DOCUMENTS sufficient to identify all ADVERTISING DATA from April 1, 2009 the present.

"Advertising data" is described in the Joint Statement as: "The term "ADVERTISING DATA" is neither vague nor ambiguous: the request clearly defines it as 'data that contains impressions, clicks, click-through rates, and conversion rates for advertisers publishing advertisements on ANY ONLINE GURU website.'" Joint Statement at 100. Online Guru does not indicate total ignorance of what is meant in the context of this case by "impressions," clicks, "click through rates" and "conversion rates." Rather, Online Guru argues:

>   The use of the term "Advertising Data" makes the request further objectionable as that term is defined to "mean data that contains impressions, clicks, click-through

> rates, and conversion rates for advertisers publishing advertisements on ANY ONLINE GURU website."
>
> Online Guru and Cartagz had a contractual relationship for approximately 10 years, but the allegations at issue concern only a fraction of that time period. It is unduly burdensome and beyond the scope of discovery for Online Guru to produce the documents contained within this request, particularly when it is unclear exactly what "Advertising Data Regarding Cartagz" is.
>
> As discussed herein, Cartagz is the party who actually gathers data concerning customer traffic. The customers that go to the Online Guru website are sent to the Cartagz website to conduct the business directly with Cartagz. Therefore, Cartagz is the party who has the most direct data and information concerning the Advertising Data. See Declaration of Kurilko, ¶10.

Joint Statement at 101.

Nor does Online Guru argue that compilation of such data is not possible.

However, a document production request is just that—a request for *existing* documents or data. It does not require a party to make a *de novo* data compilation or investigation. That is, it is one thing to ask for documents already in existence which reflect the data requested, and quite another to require the responding party to laboriously compile the data in the first instance. However, existing data that is easily retrievable from a data base by making known computer queries may be the subject of request. See Stamps com v. Endicia, Inc., 2008 WL 113382240 *3-4 (C.D. Cal. 2008).

The court understands that "data" as defined may have relevance to the copyright infringement case with respect to potential damages. Thus, for Requests 21 and 22, and to the extent such data in the possession of Online Guru already exists in raw form which can be retrieved from a data base without undue expense[3], or in already compiled documents, Online Guru will be ordered to produce such data/documents from January 2012 to the present time as it relates to Cartagz, and 2015 through the present time as it relates to CA Reg. The production must be made pursuant to a protective order agreed upon by the parties.

---

[3] If Online Guru desires to turn over its data base for a protected investigation by Cartagz experts, it may produce the information in this way as well.

12

Request 23 asking for "all advertising data" without regard to entity is overbroad and rejected. No response is required.

*CONCLUSION*

IT IS HEREBY ORDERED that:

1. No production need be made to Requests, 4, 5, 6, 7, 8, 11, 12, 13, 14, 15, 16, and 23.

2. A production as limited in this Order need be made for Requests 2, 3, 9, 10, 17, 20, 21, 22.

3. Production must be made for requests 3, 19 without limitation.

4. The parties shall agree to a protective order with respect to those requests where the undersigned has indicated a protective order is necessary by May 11, 2018;

5. All production must be made no later than May 14, 2018 and if a review is sought of this Order, production must be made as to those requests not subject to the review by the above date.

6. This Order resolves ECF No. 15.

Dated: April 23, 2018

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE